IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA


| | | |
|---|---|---|
| Jeffrey William Crouchman, | ) | CIVIL ACTION NO. 9:12-2231-CMC-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Pickens County LEC Jail, Capt. Keith | ) | **REPORT AND RECOMMENDATION** |
| Galloway, Lt. Drew Sisco, Cpl. Tammy | ) | |
| Hamilton, Sgt. Kristie Leopard, Officer | ) | |
| Riley Hope, Sgt. Anthony Massingill, | ) | |
| Officer Matt Sewell, Dr. Mary Hammond, | ) | |
| and Howard Anderson, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This action has been filed by the Plaintiff, pro se,[1] pursuant to 42 U.S.C. § 1983.

Plaintiff, who at the time this action was filed was a pre-trial detainee at the Pickens County Jail,[2]

alleges violations of his constitutional rights by the named Defendants.

All of the Defendants except for the defendant Hammond filed a motion for summary

judgment pursuant to Rule 56, Fed.R.Civ.P., on January 14, 2013.[3] As the Plaintiff is proceeding pro

se, a Roseboro order was entered by the Court on January 15, 2013, advising Plaintiff of the

---

[1]Plaintiff was briefly represented for purposes of pursuing a possible settlement of the case, but in all other respects was and is proceeding in this action pro se.

[2]Plaintiff has, since the filing of this action, been released from custody.  See Court Docket No. 40 [Change of Address Notice].

[3]The deadline for filing dispositive motions in this case was January 14, 2013, and has now expired.  See Local Rule 26.04.



importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted.

After receiving an extension of time to file a response, Plaintiff filed a memorandum in opposition, with attached affidavit and exhibits, on March 15, 2013. The Defendants' motion is now before the Court for disposition.[4]

## Background and Evidence

Plaintiff alleges in his verified Complaint[5] that when he was booked into the Pickens County Jail (date not provided) he was asked "minimal" questions concerning his medical issues and needs. Plaintiff alleges that when he saw the Defendants Dr. Hammond and medical officer Tammy Hamilton for the first time, he explained that he had a heart condition and had previously suffered heart attacks, as well as that he also suffered from severe coronary artery disease, severe anxiety, hypertension, bipolar disorder, and PTSD. Plaintiff also alleges that he told these Defendants he was receiving treatment from Pickens County Mental Health, and that he had been prescribed various medications which all had been brought to the jail by a family member. Plaintiff alleges that he was denied two medications (Ataivan for anxiety and Trazadone for mental health) and two vitamins that

---

[4]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), D.S.C. All of the Defendants except the Defendant Hammond have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[5]Plaintiff has filed both a verified original Complaint and a verified amendment. See Court Docket Nos. 1 and 11. In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).



had been prescribed/recommended for him. Plaintiff also alleges that while he was provided with Vistroil, he only received half the dose he had been prescribed. Plaintiff alleges that it was two months before he was given his Trazadon, and that was only after Dr. Hammond tried to prescribe him Amatryptiune, which Plaintiff alleges he can not have due to his history of a heart condition.

Plaintiff alleges that if Dr. Hammond had properly screened him, she would have known what he could and could not take, and that Dr. Hammond is also interfering with his treatment. Plaintiff also alleges that there is no adequate screening for mental health and no access to adequate nursing staff or emergency care at the jail. Plaintiff alleges that if you sign up for sick call, you only see Dr. Hammond on the days she is at the jail (Monday and Thursday), and that there is no medical staff at the facility at other times. Plaintiff alleges that if you have an emergency, you have to wait for an officer to respond, and only then is the doctor called.

Plaintiff alleges that on April 14, 2012, at the 4:00 a.m. "meds" call, he got up and fell on the floor with a seizure. Plaintiff alleges that the Defendant Sewell (a correctional officer) asked him "are you alright buddy?", and then walked away when he [Plaintiff] sat up. Plaintiff alleges that Sewell did not check him out, and that it was not until about five minutes later, when another officer came, that his blood pressure was checked (167/117). Plaintiff alleges that the correctional officer said she would call Dr. Hammond, but he never heard anything back. Plaintiff alleges that this was the Defendant Sergeant Leopard's shift, and his care was therefore her authority/responsibility. Plaintiff alleges that when he asked officers on the hall later that morning as well as the Defendant Hamilton (medical officer) about what happened, she said she "knew nothing about it". Plaintiff alleges he was denied a request for a grievance.

Plaintiff alleges that on May 21, 2012, he told the hall officer that he was having

3



severe chest pains and requested a nitro pill, which Plaintiff alleges his personal doctor had told him to keep with him. Plaintiff alleges that two officers came and checked his blood pressure (178/122), and then he was denied both a nitro pill and a request to be sent to the hospital by the Defendant Leopard. Plaintiff alleges that, instead, "they" called Dr. Hammond, gave him a blood pressure pill, and then rechecked him "hours later". Plaintiff alleges he was still having chest pains the next morning, and when he asked to speak to Hamilton and Dr. Hammond, an officer came after about thirty minutes later and checked his blood pressure, and then came back again twenty minutes later with a dose of Librium for anxiety. Plaintiff complains that he never got to speak with Hamilton or Hammond.

Plaintiff alleges that the following sick call day he was still having chest pains but was told he could not go to the hospital, could not have a nitro pill, and was denied any increase in his anxiety meds. Plaintiff alleges he filed a grievance, which was denied. Plaintiff alleges when he talked to the Defendant Lt. Sisco, that Sisco stated that it would "be up to Dr. Hammond" to decide on any medical issues.

Plaintiff alleges that on May 8, 2012 the Defendant Riley Hope (a correctional officer) took away his anxiety medications with no warning or explanation, although Plaintiff was told two days later that it was because of "hoarding". Plaintiff alleges, however, that another inmate gave him a note saying that because that inmate could not get that med from a doctor, he did not want Plaintiff to be able to get it either. Plaintiff alleges that it took a month to get his medication back, and that he was able to do so only after filing a grievance and by getting an attorney involved. Plaintiff alleges he suffered stress and anxiety during the month that he did not have his medications, and that even though Sisco kept telling him that it was up to Dr. Hammond, it was security that took his

4



medication, not the doctor.

Plaintiff alleges that on July 15, 2012 he started having severe chest pains and had a "hard time in getting someone to respond to call box". Plaintiff alleges he was again denied nitro pills and a request to go the hospital, and that this went on for "days" during which he suffered from severe chest pains and severe high blood pressure. Plaintiff alleges that he finally saw Dr. Hammond on July 19, 2012, who denied him any tests, blood work, or trip to the hospital, even though Plaintiff told Dr. Hammond that he was supposed to have blood work done every sixty days because of his "stents". Plaintiff alleges that Dr. Hammond told him "we don't do that", and that she also denied his request to have an EKG performed. Plaintiff alleges that when he complained to Sisco and Hamilton, both told him that his medical care was up to Dr. Hammond. Plaintiff also alleges he tried to speak to the Defendant Sgt. Massingill several times, but Massingill did not help him.

Plaintiff alleges that on July 22, 2012, even while he was still complaining of chest pains and high blood pressure, he was placed in an isolation cell for what "they" claimed was to be medical observation. Plaintiff alleges that while he was in the observation cell, the toilet did not flush properly, the intercom box did not work, his books and canteen privileges were denied, the light was on twenty-four hours a day, and there was a radio that he could hear through a vent twenty-four hours a day that was on a "very aggravating station". Plaintiff alleges he was put in the insolation cell because his daughter was calling and the Defendant Captain Galloway was saying that he [Plaintiff] had been complaining about medical services by Dr. Hammond.

Plaintiff also alleges he is being served inadequate food, and that even though he has asked for a heart healthy diet, Dr. Hammond has told him "we don't have that". Plaintiff alleges that since he does not eat red meat, the jail substituted a rice patty, when he should get a chicken patty



on days when other inmates receive red meat.  Plaintiff further alleges that every day the jail serves stale, salty potato chips which he is not supposed to eat anyway.  Plaintiff also complains that meal portions are "very small", and that the people who run the jail as well as the doctor are indifferent to inmates' nutritional needs and special diet needs.

Plaintiff also complains that conditions in the jail are extremely over crowded and filthy.  Plaintiff complains about cells designed for ten people having fifteen in them, as well as the age of the toilets and that inmates are not provided with adequate cleaning supplies "other than a watered down chemical in a spray bottle that doesn't spray".  Plaintiff alleges the showers are unsanitary and have peeling paint with mold and mildew as well as water bugs, and that there is rust everywhere and mold that they just paint over.

Plaintiff complains about the professionalism and attitudes of the Defendants Sewell and Leopard, as well as that there are inadequate dental services because all they do is pull teeth, they do not repair them.  Plaintiff alleges that on July 26, 2012 he asked Hamilton if he could see Dr. Hammond, which was denied because he had not filled out a sick call request.  Plaintiff alleges that July 25, 2012 at 9:00 a.m. until July 26, 2012 at 2:00 p.m., no one came to check his blood pressure. Plaintiff alleges that by this time he had been in the isolation cell for six days.  Plaintiff alleges that he was finally moved to another room (which had no sink or running water) on July 28, 2012, and that when he subsequently saw Dr. Hammond on July 30, 2012 she denied his request for tests for his cardiac problems.  Plaintiff alleges that as of August 5, 2012, he was still complaining of severe chest pain and high blood pressure, but that he has been denied a hospital visit or a cardiac examination while Dr. Hammond keeps giving him medication and treatment for his blood pressure that is "not working".  Plaintiff also alleges that Dr. Hammond told him he was not getting all of his



requested tests because it was too expensive.

Plaintiff seeks an order from this Court requiring the Pickens County Jail to provide him with adequate and proper medical care, including mental health treatment, with adequate access to medical professionals and services and a proper overall environment, as well as monetary damages. Plaintiff has attached to his Complaint a copy of a grievance wherein he denies that he was hoarding medications, as well as a grievance wherein the Defendant Sisco advises Plaintiff that they are following Dr. Hammond's instructions with respect to any care and treatment he is receiving. Plaintiff has also provided a handwritten time line setting forth his care and treatment. See Verified Complaint, with attached Exhibits.

In the amendment to his Complaint (Court Docket No. 11), dated August 30, 2012, Plaintiff alleges that since the filing of the original Complaint the Defendants have continued to violate his constitutional rights through their failure to provide him with proper and adequate medical care. Plaintiff complains that the doctor is using a treatment for him that is "not working" (giving him "Cadapress" twice a day), and that when he complained of not feeling well on August 9, 2012 it took twenty minutes for someone to come. Plaintiff alleges the officer on duty believed Leopard and Hammond needed to come and attend to him, but that it was forty-five minutes before Dr. Hammond showed up, and another twenty minutes before he was taken to the hospital. Plaintiff alleges that even while at the hospital, he was only given an EKG, a urine sample, and blood work, but they did no tests to check for possible stent failure. Plaintiff also alleges that he was not allowed to see the hospital report. Plaintiff alleges that other inmates in his cell block took up for him and complained that he was not receiving proper medical treatment, but that the Defendant Sisco told them that Plaintiff was "conniving" and was "faking it", which resulted in the other inmates being



mad at him and not wanting him back in their cell block.

Plaintiff alleges that Dr. Hammond then placed him on Amoxycillin three times a day along with another medication "with no explanation". Plaintiff speculates that she is trying a less expensive and easier treatment. Plaintiff also alleges that correctional officers are not being careful about when and how often they give him his medications. Plaintiff alleges that after being placed in an isolation cell again, that when he complained to jail staff about his treatment they all said "when are you going to make bond?" Plaintiff has attached to his amendment a copy of an Inmate Grievance Form wherein he is complaining about the conditions in his arraignment cell because it had no sink or running water. Plaintiff also complains about a toilet in the "detox" cell. Plaintiff is advised in the response that inmates in the arraignment cell are given fresh water daily, that he will continue to receive showers every other day, and that if he needs anything to ask the hall officer. Plaintiff has also submitted another time line. See <u>Plaintiff's Amended Complaint</u>, with attached Exhibits.

In support of summary judgment, the Defendant Tammy Hamilton has submitted an affidavit wherein she attests that she is a medical officer at the Pickens County Law Enforcement Center. Hamilton attests that, as medical officer, her job is to handle logistics, coordinate sick call appointments with the doctor, and process paper work. She does not render medical treatment to inmates. Hamilton further attests that Dr. Hammond sees patients at the Law Enforcement Center on Mondays and Thursdays each week, and that detainees are seen by Dr. Hammond by filling out a request for sick call. Hamilton attests that if a detainee has a medical situation arise on the days Dr. Hammond is not at the facility, she is contacted for instructions, or if a detainee is suffering from an obvious medical emergency, they will be transported to the emergency room without contacting



Dr. Hammond.  Hamilton attests that detainees will often request changes in their medical routine on days that Dr. Hammond is not present, and that the jail procedure is to contact Dr. Hammond with regard to the situation and follow her instructions on how to proceed.  With respect to the medical situations Plaintiff references in his Complaint, Hamilton attests that the administration of Plaintiff's requests for nitroglycerin pills or trips to the emergency room were all referred to Dr. Hammond, and that her instructions were followed with respect to these issues.  Hamilton attests that Dr. Hammond's instructions are always acted upon by the detention center staff, although her decisions are not always relayed to the detainee.  Hamilton attests that she has no authority to decide on a course of medical treatment to be administered to the Plaintiff.  See generally, Hamilton Affidavit.

The Defendant Keith Galloway has submitted an affidavit wherein he attests that he is a Captain at the Law Enforcement Center.  Galloway attests that the Law Enforcement Center has a grievance policy procedure in place, and that grievance forms are available to detainees to fill out and give to their first line supervisors.  Galloway attests that if a grievance cannot be resolved with conversation between the detainee and the involved employees, the grievance is sent to Lt. Drew Sisco for a reply.  Galloway attests that Plaintiff has utilized this procedure, and he has attached to his affidavit as Exhibit A all of the grievances Plaintiff filed while at the Law Enforcement Center. Galloway attests that, to his knowledge, Plaintiff has not appealed any of his grievances that were denied.[6]

Galloway attests that the food served to detainees is prepared by a dietitian and approved in accordance with state guidelines, and that the Law Enforcement Center provides many

---

[6]It is unclear from Galloway's affidavit whether he is referencing a further appeal procedure at the jail itself, or whether he is referencing appeals to the South Carolina Administrative Law Court.



special diet trays, including special trays for diabetics, trays that conform to certain religious beliefs, and trays for detainees who suffer from allergies. Galloway attests that the facility has no orders from Dr. Hammond with regard to Plaintiff's diet, and that the Law Enforcement Center does not have a specific heart healthy diet tray, although the facility does make protein substitutions for detainees who do not eat red meat. Galloway attests that this substitution may be a chicken patty or a veggie burger, but that in either event the substitution would meet the state guidelines with regard to the protein required to be supplied to inmates. Galloway also attests that detainees who are trying to cut down on their sodium intake can be provided with rice cakes as a substitute for chips, but that the facility does not substitute rice cakes for meat. Galloway further attests that the facility does not serve out of date food, and that portions served are in conformity with state guidelines.

Galloway attests that detainees are responsible for cleaning their own cell block, and are provided with all necessary cleaning supplies to do so. If detainees choose not to clean their cell block area, they lose television privileges. Galloway attests that the facility repairs any problems with toilets or sinks upon verification of necessity, and that to the extent the facility has ever had an issue with mildew or mold on the walls, they have been cleaned, disinfected, and treated with Kilz. Galloway attests that the Law Enforcement Center was inspected by the Department of Justice on February 15-17, 2010, and that the report stated that the jail was clean and bright and appeared to be professionally managed.

Galloway attests that detainees are required to fill out a sick call request form to see the doctor, and are then placed on the sick call roster to see Dr. Hammond. Dr. Hammond does not see detainees who have not turned in a sick call request form unless it is an emergency, and that outside of an obvious emergency, it would be Dr. Hammond's call whether the situation is emergent



or non-emergent. As for Plaintiff's dental complaints, Galloway attests that the facility does not provide routine dental care to detainees, but that in the event of a dental emergency, the affected tooth would be extracted or antibiotics would be administered.

Galloway attests that non-medical personnel at the Law Enforcement Center do not have the ability to evaluate or treat Plaintiff's medical conditions and have not done so. Galloway attests that Plaintiff's medical care is directed by Dr. Hammond, and that the non-medical employees at the Law Enforcement Center administer medications and respond in accordance with Dr. Hammond's instructions. See generally, Galloway Affidavit, with attached Exhibits [Grievance Forms].

The Defendant Kristie Leopard has submitted an affidavit wherein she attests that she is an officer at the Law Enforcement Center, and that Plaintiff would occasionally complain to her regarding medical issues on days that Dr. Hammond was not at the Law Enforcement Center. Leopard attests that on each of those occasions, she contacted Dr. Hammond to request instructions as to how to proceed and followed whatever instructions were given to her by Dr. Hammond. Leopard attests with respect to the incident alleged in the Complaint where Plaintiff was removed from his cell block and placed in the arraignment room for medical observation, this was an attempt to strictly control his diet and evaluate what impact his dietary choices might be having with regard to his blood pressure in an effort to stabilize Plaintiff's fluctuating blood pressure. Leopard attests that while Plaintiff's diet was strictly controlled (i.e., when he was not given the opportunity to make his own food choices or participate in canteen privileges), his blood pressure stabilized. Leopard further attests that the area where Plaintiff was placed for medical observation has a toilet, and that to the extent the toilet may not have worked, all Plaintiff would have had to do was to make a request



to have it repaired.  Leopard confirms that there is not running water in that area, but attests that Plaintiff was provided with a water pitcher and that any of his needs were met upon request.  Leopard attests that she is not aware of any emergency situation involving the Plaintiff on May 21, 2012, but if there had been an emergency situation, they would have contacted Dr. Hammond for instructions and acted in accordance with her instructions.  See generally, Leopard Affidavit.

The Defendant Riley Hope has submitted an affidavit wherein he attests that he is an officer at the  Law Enforcement Center, and that the  Law Enforcement Center has a policy against allowing detainees to "hoard" their medications.  Detainees are required to take their medication in the prescribed dosage at the time of administration, and Hope attests that in May 2012 it came to his attention that Plaintiff was hoarding his anxiety medications.  Hope attests that the anxiety medication wrongfully in Plaintiff's possession was confiscated by him in accordance with Law Enforcement Center policy.  Hope attests that he did not have the authority to determine whether the medication was reissued to him or under what terms his medication would be administered.  That decision is made by Dr. Hammond.  See generally, Hope Affidavit.

As an attachment to his memorandum in opposition to the Defendant's motion, Plaintiff has submitted an affidavit [Declaration] wherein he attests that he was detained at the Pickens County Law Enforcement Center from March 2012 until January 31, 2013, when he was released.  Plaintiff attests that before he was detained he had suffered two heart attacks and had to have stents placed in his heart due to coronary heart disease.  Plaintiff attests that he has also been diagnosed with, among other things, anxiety, hypertension, high cholesterol, bipolar disorder and PTSD.  Plaintiff attests that during his period of incarceration at the Law Enforcement Center, he often pleaded with the Defendants Leopard, Sisco, Hope, Sewell and Massingill to give him a



nitroglycerin pill, but that these Defendants repeatedly denied his requests because Dr. Hammond would not authorize it. Plaintiff further attests that, despite his heart condition, the Defendants Hamilton and Hammond provided him with deep fried veggie patties to eat for dinner, which he had to eat to avoid going hungry. Plaintiff attests that on May 8, 2012 the Defendant Hope knowingly and falsely accused him of hoarding his anxiety medication, and that thereafter the other Defendants refused to give him his anxiety medicine until the middle of June, during which time he experienced severe anxiety. Plaintiff further attests that attachment 1-1 to his Complaint, at pp. 5-6, truly and correctly summarizes the events of July 15-30, 2012, and that on August 9, 2012 at approximately 9:00 p.m. a blood pressure check revealed his blood pressure to be 205/112, climbing a few minutes later to 221/125 but that when Officer Holcomb repeatedly attempted to contact Leopard to come to the scene to assess the situation, Leopard refused to do so. Plaintiff attests that although paramedics twice attempted to come to the detention center, Leopard ordered them away. Plaintiff further attests that although Leopard never came, Hammond finally came to the scene approximately forty to forty-five minutes after the episode began, and that after approximately another twenty minutes, Plaintiff was finally dispatched to the hospital. Plaintiff attests that when he returned from the hospital, the Defendant Leopard admitted to him that sometimes even she questions Dr. Hammond's medical care of him.

Plaintiff attests that following his return from the hospital in August 2012, he was held in isolation for approximately a week and one half, and that although he was supposedly being held in isolation for medical observation, on many occasions he felt very ill and had to beg officers to check his blood pressure. Plaintiff states that "[a]ccording to Defendant Leopard", Galloway ordered him held in isolation so he would not receive anymore late night phone calls.



Plaintiff attests that for the first week he was in isolation, the toilet did not work properly, and that during the last four days of his isolation he was held in an arraignment room without running water or a sink.  Plaintiff also complains he had to sleep on the floor "which was covered in urine from previous detainees".  Plaintiff also attests that both the isolation cell and the arraignment room were filthy and had mold.  Plaintiff attests that since his release from the detention center, his medical conditions are again well managed, although he did have to go to the hospital on February 7, 2013 for chest pains.  Plaintiff has attached as exhibits to his affidavit a copy of his medical records from Tampa General Hospital relating to his hospitalization in early 2011 (Exhibit A), Medical Records from the Pickens Mental Health Clinic in connection with his February 20, 2012 mental health treatment (Exhibit B), and a statement from his cardiologist (Exhibit C).

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Rule 56, Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleadings is appropriate.  Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991).  Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial.  Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).  Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts



which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists.  <u>Weller v. Dep't of Social Services</u>, 901 F.2d 387 (4th Cir. 1990).

## I.

Initially, it is important to set forth exactly what claims are before the Court, and what claims are not.  First, to the extent Plaintiff had intended to assert any state law claims in his Complaint (it was not apparent to the undersigned that he had asserted any state law claims) Plaintiff seeks dismissal of any such claims, without prejudice.  Further, with respect to Plaintiff's federal claims, Plaintiff agrees to dismissal of the Pickens County LEC and Captain Keith Galloway as party Defendants, with prejudice.  Plaintiff also withdraws his federal claims against the remaining Defendants to the extent they could be construed as asserting claims against these Defendants in their official capacity, and has also withdrawn his request for injunctive relief.  <u>See</u> <u>Plaintiff's Brief</u>, pp. 8-10.

In his reply brief, Plaintiff has also narrowed his remaining claims.  <u>See</u> <u>generally</u>, <u>Plaintiff's Brief</u>, p. 9.  As a result, the only claims Plaintiff is still pursuing in this case are his claims for monetary damages against the remaining Defendants in their individual capacities under § 1983, as follows: 1) whether the Defendants were deliberately indifferent to Plaintiff's repeated pleas for treatment to stop his obvious pain; 2) whether the Defendants were deliberately indifferent to Plaintiff's medical needs by insisting on following Dr. Hammond's treatment orders rather than sending him to the hospital; 3) whether the Defendants were deliberately indifferent to Plaintiff's medical needs by interfering with the anxiety treatment that Dr. Hammond had prescribed; 4) whether the Defendant Hamilton was deliberately indifferent to Plaintiff's medical needs by giving him deep fried foods to eat despite his serious cardiac and blood pressure problem; and 5) whether



15

the Defendants Leopard and Sewell were deliberately indifferent to Plaintiff's conditions of confinement following his return from the hospital in August 2012.

## II.

Before turning to the merits of any of these claims, Defendants' first assert that the Plaintiff failed to exhaust his administrative remedies with respect to his claims prior to filing this lawsuit. Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Through the enactment of this statute, Congress has mandated exhaustion regardless of the relief offered through administrative procedures. Booth v. Churner, 532 U.S. 731, 741 (2001); see Porter v. Nussle, 534 U.S. 516 (2002); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001) [exhaustion required even though plaintiff claimed he was afraid]; see also Claybrooks v. Newsome, No. 00-7079, 2001 WL 1089548 (4th Cir. Sept. 18, 2001) (unpublished opinion) [applying Booth v. Churner to affirm district court's denial of relief to plaintiff]. Accordingly, before Plaintiff may proceed on his claims in this Court, he must first have exhausted the administrative remedies that were available to him at the Pickens County Law Enforcement Center.

The Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]; Jones v. Bock, 127 S.Ct. 910 (2007). To meet this burden, the Defendants have submitted an affidavit from Keith Galloway, who attests that he has attached copies of all of Plaintiff's grievances to his affidavit as Exhibit A. Galloway further attests



to the grievance procedure at the Law Enforcement Center, and that to his knowledge Plaintiff has not "appealed" any of his grievances that were denied. However, Plaintiff was not required to appeal any grievance denied by the Law Enforcement Center to the Administrative Law Court in order to exhaust his administrative remedies for purposes of this lawsuit, as conditions of confinement claims, such as are being asserted here, do not require exhaustion past the jail grievance process. See Johnson v. Ozmint, 567 F.Supp. 2d 806, 820, n.5 (D.S.C. 2008); Duncan v. Langestein, No. 07-268, 2008 WL 153975 at * 5 (D.S.C. Jan. 14, 2008) (citing Charles v. Ozmint, No. 05-2187, 2006 WL 1341267 at * 4 n. 4 (D.S.C. May 15, 2006) [recognizing that completion of prison grievance procedure exhausts administrative remedies and that § 1997(a) does not require inmates to further appeal to Administrative Law Court.]); Ayre v. Currie, No. 05-3410, 2007 WL 3232177 at * 7 n.5 (D.S.C. Oct. 31, 2007); Lowry v. Davis, No. 06-509, 2006 WL 3759828 at * 2 (D.S.C. Dec. 18, 2006)["It is not necessary for the inmate to file an appeal with the state ALJ Division for matters pertaining to prisoner's conditions of confinement."].[7] Therefore, to the extent Defendants' argument is that Plaintiff failed to exhaust his administrative remedies because he did not appeal the denial of any grievance to the Administrative Law Court, that argument is without merit.

Reviewing the grievance documents that have been submitted to the Court, Plaintiff grieved the discontinuance of his Hydroxizine on May 8, 2012, because an officer had allegedly

---

[7]If, however, a prisoner wishes to attack a conviction or sentence imposed by a prison disciplinary official, he or she must exhaust the prison grievance process *and* also appeal the decision to the state ALJ Division before his remedies may be said to be exhausted. See SCDC Inmate Grievance System Procedures Issued 1-1-2006, Numbers 13.7-13.9 (requiring the inmate to appeal the result of a disciplinary hearing to the South Carolina Administrative Law Court); Furtick v. South Carolina Dep't of Corr., 649 S.E.2d 35 (S.C. 2007); see also Dicks v. South Carolina Dep't of Corr., No. 9:06-cv-663-HFF-GCK, 2006 WL 1207851 at *3 (D.S.C. 2006). Cf. Braden v. 30th Judicial Circuit Ct., 410 U.S. 484, 490-91 (1973). Plaintiff is not challenging a disciplinary conviction in this lawsuit.

17



observed him hoarding this medication. Plaintiff acknowledges in this grievance that he has himself been refusing to take another medication he had been prescribed, Lamtrogine, and had asked that that medication be discontinued. The disposition of this grievance reflects that Captain Galloway approved Plaintiff getting his medication back on June 11, 2012. <u>See</u> Court Docket No. 29-3, pp. 1-3. In a grievance dated July 14, 2012, Plaintiff complains about the handling of his legal mail. <u>See</u> Court Docket No. 29-3, p. 4. In a grievance dated July 17, 2012, Plaintiff generally complains about his medical care, and in particular that his cholesterol has not been checked, that he has only been given pills for his blood pressure, and apparently about Dr. Hammond not approving him being taken to the hospital. The disposition from the Defendant Sisco (dated that same date) advises Plaintiff that jail staff does what Dr. Hammond instructs, that they pay the physician to make those choices based on her education and experience, and that prison staff would continue to check on him and continue to notify Dr. Hammond and that they would do what she advised them to do. <u>See</u> Court Docket No. 29-3, pp.5-7.

In a grievance dated August 16, 2012 (which is after this lawsuit was filed) Plaintiff complains about being placed in the arraignment room for medical observation because that room had no sink or running water. Plaintiff also complains in that grievance that he was now in the detox cell, and that it took him a long time to get the toilet to flush. The response to this grievance indicates that the arraignment room has a working toilet, and that inmates are provided with a fresh water jug. Plaintiff is also advised that he will continue to receive showers every other day, and that if he needs cleaning supplies they would be given to him. <u>See</u> Court Docket No. 29-3, pp. 8-10. In a grievance dated August 23, 2012 (again, after the filing of this lawsuit) Plaintiff complains about being placed in detox upon his return from the hospital on August 9, 2012, and that officers had told



the inmates on E Block that Plaintiff was "faking it". In a response dated August 30, 2012, the Defendant Sisco states that Plaintiff has been moved back to E Block and that the situation had been remedied. <u>See</u> Court Docket No. 29-3, pp 11-13.[8]

Considering this evidence in the light most favorable to the Plaintiff, it is readily apparent that Plaintiff did not exhaust his administrative remedies with respect to any claim relating to his food service or being provided with fried foods. None of these grievance documents reflect any such claim, and Plaintiff does not even argue that he ever grieved any such claim, asserting instead that he was "told the food/diet is non-grievable." <u>See</u> Complaint, ¶ 7. This is not a basis on which to justify a failure to exhaust. <u>Cox v. Grayer</u>, No. 08-1622, 2010 WL 1286837, at * 7 (N.D.Ga. March 29, 2010)["[T]here is no futility exception to [the] exhaustion requirement"]. Therefore, Plaintiff's claim relating to the jail's food service and having been allegedly provided deep-fried food are subject to dismissal for failure to exhaust administrative remedies. <u>Cannon v. Washington</u>, 418 F.3d 714, 719 (7th Cir. 2005) [Prisoner may not file a lawsuit before exhausting his administrative remedies]; <u>see also</u> <u>Hyde v. South Carolina Dep't of Mental Health</u>, 442 S.E.2d 582, 583 (1994) ["Where an adequate administrative remedy is available to determine a question of fact, one must pursue the administrative remedy or be precluded from seeking relief in the courts"]; <u>Nyhuis v. Reno</u>, 204 F.3d 65, 73 (3d Cir. 2000)["It is beyond the power of this court - or any other - to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."](quoting <u>Beeson v. Fishkill Corr. Facility</u>, 28 F.Supp. 2d 884, 894-895 (S.D.N.Y. 1998)).

The remainder of Plaintiff's claims, to the extent they are encompassed in his

---

[8]Some of these grievance exhibits have also been provided by the Plaintiff as attachments to his Complaint.



grievances, have been exhausted and are properly before this Court.[9]

### III.

With respect to Plaintiff's medical claims, since Plaintiff was a pre-trial detainee during the time period set forth in the complaint, his claims are evaluated under the due process clause of the Fourteenth Amendment; Bell v. Wolfish, 441 U.S. 520, 535 (1979); although for purposes of consideration of Plaintiff's claims, the standard of whether Plaintiff received constitutionally adequate medical care and/or his conditions of confinement met constitutional muster is essentially the same. See Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)[Holding that the 14th Amendment guarantees at least 8th Amendment protections]. Under this standard, in order to proceed with his claim for denial of adequate medical care, Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990).

After careful review of the evidence and arguments submitted, the undersigned does not find that the evidence gives rise to a genuine issue of fact as to whether any of these Defendants

---

[9]While Plaintiff's grievance about his treatment following his return from the hospital in August 2012 would ordinarily be subject to dismissal for having been pursued only after this lawsuit had been filed; see Cannon, 418 F.3d at 719 [Prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending.]; Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) [Prisoner "may not exhaust administrative remedies during the pendency of the federal suit."]; the evidence reflects that Plaintiff first exhausted this grievance before amending his Complaint in September 2012 to include this claim. Therefore, this issue may properly be considered by the Court. See Cannon, 418 F.3d at 719-720 [If the Court permits Plaintiff to amend his Complaint to include claims exhausted after the filing of his initial Complaint, those claims are then properly exhausted].



was deliberately indifferent to Plaintiff's serious medical needs. This finding rests primarily on the undisputed fact that none of these Defendants is a medical professional or has the authority to make medical decisions with respect to Plaintiff's medical care and treatment. Defendants' evidence certainly reflects this to be the case, and Plaintiff has provided no evidence whatsoever to establish that any of these Defendants was responsible for making medical decisions concerning his care and treatment. Rather, the evidence presented, including Plaintiff's own exhibits, clearly reflects that these Defendants' involvement in Plaintiff's medical care consisted of reporting any complaints and then following the instructions given to them by Dr. Hammond with respect to Plaintiff's care and treatment. See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) [officials entitled to rely on judgment of medical personnel]; Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) [officials entitled to rely on expertise of medical personnel].

Specifically with respect to Plaintiff's first two claims, there is no evidence that any of these Defendants are subject to any liability due to Plaintiff's "repeated pleas for treatment" or for "following Dr. Hammond's . . . treatment orders rather than sending him to the hospital". Plaintiff attempts to place these Defendants in a "Catch 22" predicament, where they are subject to liability for following Dr. Hammond's instructions, while they could also have been liable to the Plaintiff if they had *failed* to follow Dr. Hammond's instructions and something had happened to him as a result. See Lawson v. Dallas County, 286 F.3d 257, 263 (5th Cir. 2002)[Finding liability where individuals were aware of Plaintiff's condition yet failed to follow the instructions of the hospital doctors regarding treatment.]; Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are



for."]).  Even Plaintiff's own exhibits and affidavit testimony reflect that he was receiving treatment,

and Plaintiff has provided no evidence to show that these Defendants failed to discuss Plaintiff's

concerns with Dr. Hammond or that they in any way failed to carry out her instructions with respect

to his care and treatment.  Plaintiff's main complaint, at least with respect to these Defendants, seems

to be with an occasional delay (in Plaintiff's own estimation) by the Defendants in contacting Dr.

Hammond with Plaintiff's concerns, or too much time being taken in doing so.  This conclusory and

self-opinionated allegation, without any supporting evidence or indication of resulting injury,[10] is not

a basis to avoid summary judgment.  <u>Graham v. Aponte</u>, No. 08-308, 2009 WL 249779 at * 4

(E.D.Va. Feb. 2, 2009[Where claim involves a delay in, rather than outright denial of, the requisite

treatment, Plaintiff must show that the delay "caused him to suffer a life-long handicap or permanent

loss"].

        In order for any of these Defendants to face liability for these claims, the evidence

must be sufficient to create a genuine issue of fact that a Defendant had personal knowledge that

medical care being provided to the Plaintiff was creating an excessive risk of harm to him and they

failed to take corrective action.  <u>Levy v. State of Ill. Dept. of Corrections</u>, No. 96-4705, 1997 WL

112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she

'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting <u>Farmer v. Brennan</u>,

511 U.S. at 837.  Plaintiff has failed to submit any such evidence.  The mere fact that Plaintiff

repeatedly complained about chest pains and that he wanted to be taken to the hospital does not give

rise to liability on the part of any of these Defendants, as there is no evidence to show that the

---

    [10]The only medical evidence Plaintiff has submitted are records of medical procedures he had done well before he was incarcerated, and a doctor's note detailing some recommended treatment well after he was released.  <u>See</u> <u>Plaintiff's Declaration</u>, attached Exhibits A-C.  None of these exhibits provide support for his claims here.



Defendants did not follow Dr. Hammond's instructions with respect to Plaintiff's care and treatment for his complaints. Miltier, 896 F.2d at 854 [officials entitled to rely on expertise of medical personnel]. In fact, Plaintiff's complaint is that Dr. Hammond's instructions were being *followed*. But see, also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances].

   The only possible exception to this finding is with respect to Plaintiff's claim that the Defendants were deliberately indifferent to his medical needs by interfering with the anxiety treatment that Dr. Hammond had prescribed. However, the evidence with respect to this claim is that some of Plaintiff's anxiety medication was confiscated on May 8, 2012 because Office Hope reportedly observed Plaintiff attempting to unlawfully hoard his medication. See Hope Affidavit, Galloway Affidavit, attached Exhibit A. Even assuming Plaintiff's statement in his affidavit that he was not hoarding to be true for purposes of summary judgment; see Plaintiff's Declaration, ¶ 12(b); Plaintiff does not dispute that jail policy prohibits the hoarding of medications by inmates, and that this was why his anxiety medication was taken from him on May 8, 2012 (whether rightly or wrongly). Nor has Plaintiff provided any evidence to dispute Hope's sworn statement in his affidavit that he did not have the authority to determine whether or when this medication would be reissued to the Plaintiff or under what terms his medication would be administered.[11] Indeed, Plaintiff

---

[11]If Plaintiff had not been released, Plaintiff *may* have been entitled to have this claim proceed as part of a request for injunctive relief, if he could have shown the likelihood that the issue could arise again and that the policy should provide an alternative, such as a liquid form taken in front of a prison official. However, Plaintiff is no longer incarcerated, and that claim would not be against Defendant Hope in any event. Slade v. Hampton Roads Reg'l Jail, 407 F.3d 243, 248-249 (4th Cir. 2005)[holding that former detainee's request for injunctive relief was moot]; Taggart v. Oklahoma, 74 Fed.Appx. 880, 882 (10th Cir. 2003)[inmate's claims concerning his medical needs against prison

(continued...)



concedes in his Verified Complaint that Sisco kept telling him that the return of his medication was up to Dr. Hammond.  See Verified Complaint, p. 5

There is also no evidence to show that Plaintiff was not continued on his other medications during that period of time, that Plaintiff was himself (as he admitted in his grievance) refusing to take other medication that had been prescribed by Dr. Hammond, nor has Plaintiff presented any evidence (other than the general and conclusory claims in his Complaint) to show that he suffered any injury as a result being denied the cited anxiety medication prior to his medication being resumed.  Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Holley v. Johnson, No. 08-629, 2010 WL 2640328 at * * 9-15 (W.D.Va. June 30, 2010)[noting that while excessive force claim does not require showing of a significant injury, condition of confinement claim does]; Levy, No. 96-4705, 1997 WL 112833 ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"].

Therefore, these Defendants are entitled to summary judgment on Plaintiff's medical

---

[11](...continued)
officials for injunctive relief were rendered moot by his release]; LaFlame v. Montgomery County Sheriff's Dep't., 3 Fed.Appx. 346 at * * 1 (6th Cir. Jan. 31, 2003)[same].



claims.[12]

**IV.**

Plaintiff also alleges that the Defendant Leopard and Sewell were deliberately indifferent to his conditions of confinement following his return from the hospital in August 2012. In his grievance related to this claim, Plaintiff complains that the arraignment room in which he had been placed for medication observation had no sink or running water, and that when he was subsequently placed in the detox cell, it took him a long time to get the toilet to flush. In his appeal of the initial denial, Plaintiff complains of urine on the toilet and on the floor and that if he is going to be in that cell he needs to be able to clean it. In response the Defendant Sisco tells Plaintiff that, if he needs anything, to just ask the hall officer, that if he is in need of cleaning supplies they should be given to him (with Sisco stating that he will personally "address that"), and that Plaintiff would continue to receive showers every other day.  See Court Docket No. 29-3, pp. 8-10).  Plaintiff also attests in his Declaration that the isolation cells and arraignment rooms were both "filthy and had mold", although these complaints were not raised in his grievance.

In his affidavit, Galloway attests that detainees are provided necessary cleaning supplies, that the last time the Law Enforcement Center was inspected by the Department of Justice (2010), the jail was determined to be clean and bright and professionally managed, and that to the extent the facility has ever had an issue with mildew or mold on the walls, they have been cleaned,

---

[12]Even if this claim were otherwise allowed to proceed, since there is no evidence that anyone other than Sisco and Hope were involved in this incident, the remaining Defendants would be entitled to dismissal as party Defendants under this claim.  See Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1999) ["Liability . . . must be based on the personal involvement of the defendant"], cert. denied, 522 U.S. 1154 (1999); see also Horton v. Marovich, 925 F.Supp. 540 (N.D.Il. 1996)["Thus, a plaintiff suing a government official in his individual capacity and therefore seeking to hold the official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal right"].



disinfected, and treated with Kilz. Leopard also attests in her affidavit that toilets are repaired when requests are made, and that Plaintiff was provided with a water pitcher when he was in the cell without any running water.

The paucity of evidence (as discussed hereinabove) concerning the conditions of Plaintiff's confinement in the arraignment and detox cells, otherwise supported only by the general and conclusory claims by Plaintiff in the Amended Complaint, is simply not sufficient to create a genuine issue of fact as to whether a constitutional violation occurred. Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) ["[O]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]. During the time period at issue, Plaintiff was a prisoner being held in a county jail. He was not in a hotel. It is to be expected that conditions of confinement under such circumstances are less than ideal. Hadley v. Peters, No. 94-1207, 1995 WL 675990 *8 (7th Cir. 1995), cert. denied, 116 S.Ct. 1333 (1996) ["prisons are not required to provide and prisoners cannot expect the services of a good hotel."] (quoting Harris v. Fleming, 839 F.2d at 1232, 1235 (7th Cir. 1988). The only issue is whether the evidence shows that the conditions under which Plaintiff was confined violated his constitutional right to be free from conditions so deplorable that they could be deemed cruel and unusual punishment. There is no such evidence.

Considered in the light most favorable to the Plaintiff, the evidence is that during the relatively short period of time Plaintiff was held in the arraignment cell and/or detox cell, he had a toilet that did not flush properly, that instead of having a sink with running water he was provided with a pitcher of water, and that he was generally dissatisfied with the overall condition of his cells and was unhappy with the cleaning material he was provided to clean the cell with. Although it is



certainly understandable the Plaintiff did not want to be held in custody under these conditions, the conditions cited under the circumstances of Plaintiff's incarceration and the period involved simply do not amount to a constitutional violation.  Cf. Kidwell v. Buchanan, No. 93-15056, 1993 WL 230224 at **1 (9th Cir. June 29, 1993) [Where temporary restriction of amenities was found not to be cruel and unusual punishment]; Schroeder v. Kaplan, No. 93-17123, 1995 WL 398878, * 2 (9th Cir. July 7, 1995)[No mattress for approximately one month held not to be unconstitutional]; Rish, 131 F.3d at 1096 ["[O]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; Isaac v. Fairman, No. 92-3875, 1994 WL 63219, * 5-6 (N.D.Ill. 1994) [allegation that prisoner was provided only one uniform and denied adequate opportunity to wash did not state claim]; Farmer, 511 U.S. at 834-835 [noting that nothing in the evidence presented to the court showed that plaintiff was ever denied the minimal civilized measure of life's necessities, or that any defendant engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"]; Vacca v. Scott, 119 Fed. Appx. 678, 679 (5th Cir. 2005)[Finding that although Plaintiff averred that Defendants acted with deliberate indifference in denying him access to a bathroom because they knew of and disregarded excessive risk to his present and future health, his conclusory allegations failed to state the nature of the risk to his present and future health sufficient to give rise to a § 1983 claim]; Qawi v. Howard, No. 10-11, 2000 WL 1010281 at * 3-4 (D.Del. July 7, 2000)[denial of use of bathroom for six hours during which inmate was forced to urinate in a drinking cup and bowl and defecate into a paper bag did not constitute sufficiently serious deprivation because duration of condition was brief and inmate suffered no significant health risk]; Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1977)[accepting Plaintiff's allegations for purposes of summary judgment that cells were unbearably hot, infested



with vermin, smeared with human feces and urine, flooded with water from a leaky toilet above, and where food provided was cold and provided in smaller portions, but holding that such conditions were not "so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life."]; see also Alberti v. Klevenhagen, 790 F.2d 1220, 1228 (5th Cir. 1986) [Eighth Amendment does not require "the provision of every amenity needed to avoid mental, physical, or emotional deterioration."].

Further, Plaintiff has presented no evidence to show that he suffered any compensable harm during the period of time he was in the arraignment/detox cells carceration which would entitle him to monetary damages. De'lonta v. Johnson, ___ F.3d ___, 2013 WL 310350 at * 4 (4th Cir. Jan. 28, 2013) ["Only an extreme deprivation, that is, a 'serious or significant physical or emotional injury resulting from the challenged conditions,' or substantial risk thereof, will satisfy the objective component of an Eighth Amendment claim challenging the conditions of confinement."]; Rankin v. Klevenhagen, 5 F.3d 103, 108 (5th Cir. 1993)[certainly some injury is required]; Holley, No. 08-629, 2010 WL 2640328 at * * 9-15 [noting that while excessive force claim does not require showing of a significant injury, condition of confinement claim does]. Indeed, Plaintiff's own evidence reflects that not only has he not suffered any harm as a result of this incarceration, but that he continued to receive regular medical reviews and attention. Eady v. Sawyer, No. 02-1225, 2005 WL 2206249, at *5 (S.D.Ill. Sept. 12, 2005) [case dismissed where, although Plaintiff may have experienced some discomfort, he made no viable claim of physical harm suffered due to temporary lack of mattress or pillow]; Wilson v. Cook County Bd. of Commissioners, 878 F.Supp. 1163, 1167-1168 (N.D.Ill. 1995) [pretrial detainee failed to establish that overcrowding, inadequate staffing, inadequate opportunity for exercise, and inadequate grievance procedures in detention facility violated detainee's due process



rights, as detainee failed to allege remedial injury]; <u>Grissom v. Davis</u>, 55 Fed.Appx. 756, 757-758 (6th Cir. 2003) [No violation where Plaintiff endured seven day mattress restriction but suffered no more than a de minimis physical injury]; <u>Harris</u>, 839 F.2d at 1235 [prisoner deprived of toilet paper, soap, toothpaste and toothbrush while kept in filthy, roach infested cell suffered no punishment when no physical harm resulted]; <u>Thaddeus-X v. Wozniak</u>, No. 99-1720, 2000 WL 712383 at **3 (6th Cir. May 23, 2000)[Plaintiff must show he suffered more than de minimis injury]; <u>Harper v. Showers</u>, 174 F.3d 716, 719 (5th Cir. 1999)[Without proof of more than de minimis physical injury, Plaintiff cannot maintain his claim]; <u>Norman v. Taylor</u>, 25 F.3d 1259, 1263 (4th Cir. 1994)[absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment claim if his injury <u>de minimis</u>].

This lack of evidence of a constitutionally compensable injury is fatal to Plaintiff's claim for monetary damages. <u>Holley</u>, 2010 WL 2640328 at * * 9-15 [noting that while excessive force claim does not require showing of a significant injury, condition of confinement claim does]; <u>Shakka v. Smith</u>, 71 F.3d 162, 166 (4th Cir. 1995)["In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eight Amendment claim, a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions', or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions"].

By reaching the conclusion that no compensable constitutional violation has been shown in the evidence, the undersigned does not intend to signal a lack of concern over Plaintiff's complaints. However, while Plaintiff may have some state law claim or administrative process he could pursue, absent some evidence of a significant injury suffered by the Plaintiff as a result of



conditions deemed to be unconstitutional, or other accompanying factors not present in this case, the undersigned does not find that Plaintiff has presented a genuine issue of fact as to whether his constitutional rights were violated during the time period he was in the arraignment/detox cells sufficient to survive summary judgment.  See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; see Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right].

### Conclusion

Based on the foregoing, it is recommended that the motion for summary judgment be **granted**, and that all of the Defendants (with the exception of the Defendant Hammond) be **dismissed** as party Defendants in this case.

The parties are referred to the Notice Page attached hereto.

March 22, 2013                                    Bristow Marchant
Charleston, South Carolina                        United States Magistrate Judge

30



### Notice of Right to File Objections to Report and Recommendation


The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29401

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

